UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| JUSTIN C. HAEBERLI, by ) <br> Next Friend Ayla Haeberli, ) <br> or guardian Ayla Haeberli ) <br> ) | Civil Action No: |
| And ) <br> AYLA HAEBERLI ) <br>     Plaintiffs, ) <br>     vs. ) <br> Sunshine Health ) <br> And ) <br> Centene Corporation ) <br> and ) <br> NurseSpring of Jacksonville, LLC ) <br> And ) <br> Aveanna Healthcare, LLC, ) <br> and ) <br> Absolute Health Professionals, INC ) <br> and ) <br> Family First Homecare, LLC ) <br> and ) <br> Sonas Home Health Care, Care Options ) <br> For Kids ) <br> and ) <br> Maxim Healthcare Services, Inc ) <br>     Defendants. ) | |

_____/

1

## COMPLAINT AND DEMAND FOR JURY TRIAL

Mr. Justin Connor Haeberli, by next Friend and/or Guardian Ayla Haeberli and Ms. Ayla Haeberli files this complaint and demand for Jury Trial against defendants NurseSpring of Jacksonville LLC, Aveanna Healthcare LLC, Absolute Health Professionals Inc, Family First Homecare LLC, Sonas Healthcare or Care Options for Kids, Maxim Healthcare Services LLC, Centene Corporation, Sunshine Health for depriving and/or conspiring to deprive plaintiff(s) of rights secured under the Ominbus Budget Reconciliation Act(OBRA) of 1987 and 1990,, 42 USC Section 1396 , Title XIX of the Social Security Act of 1965, The Medicaid Act, the Social Security Act codified in title 42 USC 301-1305, (section 1915(c) of the social security act regarding Home and Community based services "HCBS"), Title II of the Americans with Disabilities Act (ADA), 42CFR section 440.180, 42 USC Section 1396 Medicaid and CHIP Payment and Access Commission, 42 CFR 441.301(c), Florida state plan pursuant to Statewide Medicaid Managed Care (SMMC ) contract Attachment II, Exhibit II-B: updated February 1, 2022 Long-Term Care (LTC) Program, (FPXXXX),  42 USC section 1320a-2, 42 USC section 1396(a)(a)(8), 42 CFR  Section 438.208(b), 42 CFR section 441.530(a)(1)(i-v), 42 CFR 441.301(b)(1), 42 CFR section 441.301, 42 CFR 438.206, the constitution of the United States, 42 USC section 1983 and USC section 1985.

## I.   Parties, Jurisdiction and Venue

1.  Plaintiff Justin Haeberli ("Mr. Haeberli") is an adult individual residing in a private residence located at 1630 Mercer's Fernery Rd in Deland, Volusia County, Florida within the geographical boundaries of the Middle District of Florida.  At all times relevant to this action, Mr. Haeberli has resided within the geographic boundaries of the Middle District of Florida.

2.  Plaintiff Ayla Haeberli ("AH") is an adult individual, the mother and Guardian Advocate of Mr. Haeberli who resides in a private residence located at 1630 Mercer's Fernery Rd in Deland, Volusia County, Florida within the geographical boundaries of the Middle District of Florida.  At all times relevant to this action AH has resided within the geographic boundaries of the Middle District of Florida.

3.  Sunshine Health ("SH") is a Florida Medicaid health plan and a wholly owned subsidiary of Centene Corporation which provides Medicaid services within the geographical boundaries of the Middle District of Florida.  Sunshine headquarters is located at 1301 International Pkwy Ste 400, Sunrise Florida 33323 in Broward County.

4. Centene Corporation is located at Centene Plaza 7700 Forsyth Boulevard, St Louis, MO 63105. Well Care and Sunshine Health are both wholly owned subsidiaries of Centene Corporation.

5. NurseSpring of Jacksonville, LLC is a provider of homecare services located at 10024 San Jose Blvd., Jacksonville, FL 32257. The Duval county based company provides services in Volusia County and is a contracted provider for SH.

6. Aveanna Healthcare (AHC) is a provider of home nursing services that is located at 126 Integra Breeze Lane, Ste B3, Daytona Beach, 32117, Volusia County, Florida and AHC is headquarted at 400 Interstate North Parkway, SE, Suite 1600, Atlanta GA 30339. AHC is a contracted provider for SH.

7. Absolute Health Professionals, Inc. is an home care provider contracted with SH and is located at 5305 S Ridgewood Ave, Port Orange, Fl 32127.

8. Family First Homecare ("FFH") provides pediatric home care and is contracted with SH. They are located at 149 S Ridgewood Ave Unit 210, Daytona Beach 32114 with a corporate office located at 2203 N. Lois Ave, Ste 700, Tampa FL 33607.

9. Sonas Home Health Care, that merged into a Care Options for Kids company is located at 444 Seabreeze Blvd Ste 725730, Daytona Beach, FL 32118.

10. Maxim Healthcare services Provides private duty nursing services and is located at 1530 Cornerstone Boulevard, Suite 230, Daytona Beach, FL 32117.

11. This case presents an issue of federal law, and therefore, subject matter jurisdiction is proper in this Court, pursuant to 28 U.S.C. Section 1331.

12. All acts and events relating to this action having occurred within the geographical boundaries on the Middle District Court of Florida, venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

II.   Factual Allegations

13. Mr. Haeberli suffers from a catastrophic from of epilepsy called Dravet Syndrome, low cognitive function, has autism and behavioral problems.  He resides at home with his mother and guardian advocate, AH.

14. Mr. Haeberli requires an institutional level of care, including but not limited to 24/7 in home nursing services which is

covered/approved under the Long Term Care (LTC) Home Based Community Services ("HCBS") Waiver.

15. Over the years, Mr Haeberli has been prescribed by several doctors the need for two caregivers at all times one of which is to be a skilled nurse.  Prior to receiving LTC HCBS which started October 2022, he was on Medwaiver which did provide a second caregiver for 20 hours/weekly and Medicaid provided the 24/7 nursing.

16. In January 2021 and prior, Mr. Haeberli had a very difficult time getting staffed by nursing agencies.  On 5/5/2021, he was discharged from Maxim for an inability to staff and on 8/18/2021 he was discharged from Sonas for an inability to staff.  He later was a patient of Family First Homecare on or around 9/17/2021 and then on or around May 15, 2023, Mr. Haeberli, transitioned to Aveanna Home Care due to an inability to staff.  Aveanna had difficulty staffing Mr. Haeberli and they agreed to share the case with another agency.  A second nursing agency, Absolute Health Professionals was prescribed to start on 8/19/2024.   Mr. Haeberli was utilizing two agencies Aveanna Home Care and Absolute Healthcare Professionals and remained substantially unstaffed during day shifts.  In mid-September 2024, Mr Haeberli transferred the whole

6

case to NurseSpring of Jacksonville who is still not adequately staffing the case.

17. During periods when Mr. Haeberli is not staffed, which substantially occurred during 2021 through present , he has had a history of self-injurious behaviors, elopement, and property damage. This includes and is not limited to pulling out his toenails and fingernails, scraping his skin until it bleeds, falling, breaking items in the home, property destruction of both home and vehicle and elopement from the home.  For example, on June 19,2023, Mr Haeberli eloped from the home without his pants on and was found on the road going through mailboxes.  A neighbor called the police. This is how both Mr Haeberli and AH were introduced to their neighbors and was highly embarrassing.

18. On 8/22/2001 and shortly after being discharged from Sonas for a failure to staff, the home was flooded when Mr. Haeberli lifted a toggle on the hot water heater in the middle of the night.  Over the past three years, the home has been without substantial flooring, missing doors and needs repair/modification.  There is no way to complete the home repairs without care from two caregivers,

complete staffing and relocating Mr. Haeberli during the period of the repair.

19. Failure to provide MR Haeberli with his approved services for 24/7 nursing, confines him to the home, a forced isolation. While in the vehicle he requires a minimum of 1 person next to him and another to drive. Mr. Haeberli requires two people at all times for his safety. Without which, he is denied access to the community, special needs classes (e.g. adaptive dance, swimming, art classes), activities outside of the home (e.g. bowling, parks, bingo, etc), therapy (e.g. speech therapy, equine therapy, music therapy), medical appointments, and socialization.

20. Sunshine has also been unable to find therapies which were or would be approved for Mr Haeberli (e.g. Applied Behavioral Analysis and art therapy). Sunshine has also denied requests for the second caregiver (12/7) that had been appealed twice. This is with full knowledge that Mr Haeberli has injured himself numerous times due to gaps in services, a failure to provide a second caregiver and that Ayla Haeberli has been forced to attend to Justin's needs 24/7.

21. The Nursing Agencies were unable to staff gaps in services even when nurses gave a month or more notice of vacations, medical procedures, or resignation.  For example, in February of 2023 Mr. Haeberli received services from Family First.   Nurse Diane Carrow had given notice of planned surgery; she was out for 25 days. During that time the agency could not fill her hours and in total only staffed 68 hours of a total 600 hours were filled.

22. In late May 2024, Mr Haeberli's legal guardian, Ayla Haeberli, again requested that a second agency be found to help cover the staffing issues.  The Sunshine care coordinator, Sonia Cooper-Brian, did not provide a second agency.  Approximately two months later the Sunshine coordinator claimed to be considering an agency in Fernandina Beach, approximately three hours away.

23. In April of 2024 when Mr Haeberli was a client of Aveanna Healthcare, his nurse, Michael Bizzoli, who was working approximately 4 twelve-hour day shifts weekly, gave one month notice to the Aveanna Healthcare Agency prior to leaving for another higher paying job.   The agency claimed that they had 5 possible nurses to fill shifts, yet not one nurse filled the position or oriented at the time he left on May 23, 2024.  In the month of June, 27

of 60 (8 to 12-hour) shifts were missed.  Of those missed shifts, 22 of 30 dayshifts were not staffed.  This severely restricted access to among other things, the community, therapy, classes.

24. Aveanna would send people out to orient when they knew or should have known that the nurse was not going to take the Job. Many nurses did not show up to scheduled appointments to orient. Additionally, several nurses sent were in school and left after a short duration in order to complete their classes.  The care provided tended to be transient.  The quality of care was also an issue.

25. In July 2024 Mr. Haeberli received service for only 13 of 31-day shifts which needed to be staffed; In July there were a total 28 missed day shifts.   The 13 days that had been covered were from a nurse who provided a very poor quality of care, and the treatment bordered on abuse which was under investigation by DCF.   After reporting the incidents to the nursing agency, Aveanna Healthcare, and providing images/videos, the Department of Children and Family were involved.

26. In August 2024, Mr. Haeberli did not receive 29 out of 62 nursing shifts.

27. AH had asked Aveanna Healthcare for a copy of all missed doctors' visits and the agency has not provided it to date.  Aveanna also would not provide AH access to the portal for approximately six months.

28. Mr. Haeberli was scheduled to attend summer special needs classes for 2 days a week in the months of June and July that were paid for. He was not able to attend any of the classes due to a failure to staff with a nurse who would be able to manage Justin.  He also missed most of the classes which AH had paid for in the prior year.  AH pulled Justin from all classes for the fall semester because of a history of not being able to attend.

29. In early August 2024, Mr. Haeberli's legal guardian took it upon herself to reach out to nursing agencies to see if they could find nurses to cover the day shifts.  After several weeks, Absolute Health Professionals found two nurses.  Sunshine required Mr. Haeberli's doctor to write and rewrite prescriptions three times.  The delay in approving the second agency caused Absolute to lose one of the nurses.

30. Sharing the hours with a second provider changed the service agreement with Aveanna from 168 hours per week to 84 hours per

week. Aveanna created a service agreement. Aveanna initially tried to contract directly with AH for Mr Haeberli's Patient Service Agreement which including the following language: "Ayla Haeberli I agree to follow the treatment plan and understand that I maintain full responsibility for all necessary care in the absence of an agency employee". After complaint to Aveanna, the next contract was with Mr Haeberli and it directed Mr Haeberli take the responsibility for his own care when Aveanna was not staffing. Upon further complaint, the language was stricken from the contract. These contracts provided to Aveanna patients and/or their families are typically on the computer and AH had to request a hard copy of the contract prior to signing. The language relieves Aveanna of any responsibility for a failure to staff the patient. This language was in a prior contract signed by AH.

31. On August 16, 2024, when it appeared that we may become staffed, the speech therapist was contacted for treatment and she texted the following: "The insurance company gave me a lot of grief this last authorization, so I do not believe that I'll get more visits through them. The last two months we've had three sessions. They keep telling me the end goal is to discharge 2 at home program."

Sunshine caused Mr Haeberli to lose his Speech Therapist by making it arduous to get authorizations and by not providing authorized services, Nursing, thereby limiting his access to therapy.

32. Music therapy sessions had ended at the end of March 2024 and Mr Haeberli's Doctor had to, on three separate occasions, write and rewrite prescriptions for more services. The care manager Sonia Cooper Brian in early August stated that it had been approved but that Sunshine Health had to find a provider. This was not a new service; Beachside Music Therapy had provided services, and this was supposed to be approval for more sessions. Music therapy sessions resumed on September 3, 2024, after a full 5 months without services.

33. Absolute Health Professionals was not able to staff the case as expected. They claimed that they were being paid 35 dollars/hour which is the same amount paid to the nurse who worked 3 days shifts/week. They could not allow the only day nurse we had to work a fourth day because they could not afford to pay the time and a half. This contracted provider for Sunshine did not get a single case agreement that would provide them with an increased hourly rate so that they could hire nurses with a competitive rate. This was

related to the Agency for Heath Care Administration, AHCA, during a complaint filed on 9/3/2024 and 9/5/2024.

34. Shortly after Mark Donnelly, our third case manager with Medicaid Long Term Care, LTC, Home and Community-Based Services, HCBS, Waiver, became our case manager in the latter part of August 2024, AH requested he find another agency since Mr Haeberli was still substantially unstaffed.  He only called two agencies.  One which would not take our case (Maxim) and another that did not provide nursing services in Volusia.  Without much assistance from Mr Donnelly, AH then took it upon herself and reached out to NurseSpring, an agency which she had found on the Sunshine provider list.

35. AH was told by a NurseSpring representative that they would be able to staff the case and they would need a Single Case Agreement with SH to be able to offer a higher rate of pay.  AH was also told that her nurses would have an increase in pay if they came with their agency.

36. AH received a copy of the termination letter from Aveanna which had contact information for a person in contracts from Sunshine Health, Lucas Witkowski, who informed her of the single case

agreement (with NurseSpring).  AH learned that NurseSpring was
contracted for $75/hour.  Aveanna had only been making $50/hour.

37. NurseSpring tried to lowball one of the nurses and not give her a
raise requiring AH to discuss issues with the supervisor, Loraine
Hendricks.  Reginald Graham told AH that the nurses were happy
with their pay.  One of the nurses told AH that she was not happy
with the pay (no raise) and that she had made that clear to Reginald
during their in person hiring process on October 1, 2024.

38. Two nurses came over to NurseSpring with Mr. Haeberli.  One
works four-night shifts weekly and the other 3-4 day shifts weekly.
NurseSpring did find one day nurse, Cindy, to work two day shifts
weekly who is a very ill fit for the case.  I told them that she needed
to be replaced, and Lorane (supervisor) said that they would remove
her from the case, but that Mr. Haeberli would have 1-2 missed
shifts.  AH told her to leave her on schedule and quickly get a nurse
to replace her. Now, four weeks later there is no replacement.

39. NurseSpring found a Night nurse who is in the late stages of
pregnancy (due in December 2024).  This is also a very ill fit for Mr.
Haeberli.  AH told NurseSpring that there are concerns.  If Mr.
Haeberli had a seizure, how likely would she be able to or want to

break his fall so he did not get hurt.  The Nurse initially said that the pregnancy would not affect her ability to care for Mr. Haeberli and a week later said that she did not want to give him a shower due to her pregnancy.

40. AH had been getting much conflicting information from NurseSpring.  During a scheduled absence from one of the night nurses, AH was told by Reginald Graham (DON) that the other night nurse would take her shifts.  Yet on Oct 22, 2024, the night nurse told the on coming day nurse that she had been taken off the schedule for the next two nights because she had worked 5 days in a row.  NurseSpring was more concerned with overtime than the patient.  When AH called NurseSpring on Oct 22, 2024, Jenny Smith (scheduler) told her that there was miscommunication, and the night nurse was not on the schedule which conflicted with what she was told by Reginald and what the nurse had said.

41. AH also called NurseSpring to have Mr. Haeberli's preferred day nurse take an open Sunday shift and was told by Kim Brinceanu that she could take the shift on the prior Wednesday.  Yet, when the nurse called in to request the shift on Friday, Jenny told the nurse that she was already trying to fill the shift and would have to let her

know.  The only other day nurse in the case was the one that AH wanted replaced.  AH called and talked with Reginald and demanded Mr. Haeberli's preferred nurse be placed on the schedule. Overtime was being placed in front of Mr. Haeberli's care needs.

42. On Monday October 21, 2024, AH was getting very frustrated with the lack of acceptable staffing provided by NurseSpring and called Nurse Spring to find out the pay rate they were using in their advertisements.  During the discussion, with Kim Brinceanu and Reginald Graham, they would not disclose the pay rate.  Reginald stated that they do not include the pay in their advertisement claiming that pay is only between the nurse and the agency.  AH told them that if they advertised a pay rate of between $37-40 per hour, it would be filled.  During the same discussion, AH stated that Nurse Cindy was to be replaced 3 weeks ago and wanted to know when that would happen.  Reginald pretended not to know anything about replacing Cindy.  AH asked for a return phone call from Loraine (supervisor) which did not happen.

43. On October 22, 2024, Jenny Smith (Scheduler) told AH that they are putting another advertisement on indeed and would not disclose what they were offering the nurses. There was an Indeed

advertisement which did not give any pay or pay range for the case. It also sought an LPN with at least one year of experience.  There was no mention of experience with seizures, autism or behavioral problems.

44. On October 22, 2024, AH wrote Mr Donnelly and Ms Well from Sunshine regarding dissatisfaction with NurseSpring, regarding falsehoods, staffing issues, not wanting to pay overtime, not putting hourly pay in their advertising and greed.  The following day Mr Donnelly and Ms. Wells called AH and defended NurseSpring.

45. Prior to accepting NurseSpring, Mr. Haeberli had three good nurses. Now, he only has two good nurses, and he is worse off than before changing to NurseSpring.

46. Reginald Graham, DON, requires that even the use of a band aide on Mr. Haeberli would require a prescription from his doctor.  These types of requirements place a substantial burden on Mr. Haeberli's Primary Care Provider who has already made it clear how difficult it is dealing with sunshine and Justin's care needs.

47. Mr. Haeberli's privacy and medical HIPAA rights are violated by gossip from other nurses, and this is likely why he has been running into staffing issues.  One of Mr. Haeberli's current nurses was told,

by her old client's mother and another nurse, not to take the case in
Deland because the boy was very difficult. This is without them
ever having met AH or Mr. Haeberli.

48. AH requested a second caregiver (12/7) in addition to 24/7 nurse to
staff Mr. Haeberli which had been denied, appealed, denied again
and request for fair hearing was made. After AHCA dismissed a
fair hearing due to a mistake in using the wrong AHCA email
address, the Case had been in the 5DCA since November 2023.
Sunshine is in possession of many images whereby Mr. Haeberli had
been injured when he did not have two caregivers. The first appeal
had approximately 2 inches of documents to substantiate the need.
The case Number 5D2023-3343 was adjudicated on 9/17/2024 and
the appeal of the AHCA fair hearing dismissal was denied after
sitting in the 5DCA for 10 months. The denied appeal simply
requested access to a fair hearing with AHCA. AH is in the process
of asking for another fair hearing request on the exact same request
with a new denial from Sunshine and this time an authorized
representative form was sent to the correct email address. AHCA is
still trying to deny Mr. Haeberli to a fair hearing. Now there is
another order to show cause because they are claiming that the

hearing request is from a denial from 2023 and untimely. There is so much evidence of physical injury to Mr. Haeberli, elopement and property destruction, when there is only one single attendant caring for him, that the appeal should never have been denied in the first place.

49. When Mr Haeberli accepted the HCBS waiver on October 2022, Sunshine would not approve his durable medical equipment, DME, for as much as 22 months. This continues today. Only this past August, sensors were received for use with a pulse oximeter. Mr Haeberli had broken those sensors and Sunshine Health is refuing to send out any replacements. AH has already replaced the Pulse Oximeter three times since Sunshine Health provided a single handheld unit over a year ago without sensor replacements. Respitec (oxygen suppliers) had called AH numerous times regarding picking up oxygen, but they could not since Sunshine would not timely provide the DME authorization for oxygen or concentrator. AH paid an invoice to Respitec due to Sunshine Health having delayed access to DME. We also had difficulty getting the cough assist approved. We had great difficulty getting acceptable pull-ups which required appeal. Mr Haeberli was denied

access to rectal administration of seizure medication due to age which was not medically substantiated and had to be appealed. By delaying access to benefits through endless denials, Sunshine Health is essentially denying those benefits for a period of time and financially benefiting.

50. Mr Haeberli had great difficulty getting his medication Synthroid covered by Sunshine. After much complaining to sunshine he finally got a month covered in February 2023 only then to be denied the following month. This occurred over a period of approximately 6 months after accepting the HBCS waiver in October 2022 and Mr Haeberli was reliant on taking his mother's medication. CVS would not timely fill medication. AH had difficulty getting PRN medication filled because they would say that Sunshine did not approve what he was prescribed or that they interpreted the quantity to be less than what was prescribed. We moved to Walmart and they did not want to fill his PRN medication and required justification as to why the medications were needed; both AH and Mr Haeberli's grandmother had to justify Mr Haeberli's need for his medications with the pharmacist in the middle of Walmart; this is a conversation the pharmacist should have had with

the doctor.  We are now with Publix and Walgreens who fill the prescriptions without issue.

51. A couple months ago AH requested that Justin's mail order medication come in three-month aliquots.  She explained that mail order of seizure medication for only one month at a time presents issues for Mr. Haeberli should he not receive the medications timely. Recently and just prior to Hurricane Milton, AH tried to fill a prescription with Panther Pharmacy and there were delays due to not having refills and getting Mr. Haeberli's neurologist to timely file refill request.  The medication, Diacomit, was received on 10/15/2024.  While we had enough medication to get us to that date, had Hurricane Milton been more powerful and destructive we likely would have run out.  This is dangerous for Mr. Haeberli who should always have access to his medication.  This has been discussed twice with Valorie Smith, a senior Case Manager, without resolve. Another complaint or grievance will need to be filed.

52. Reimbursements are not available through Sunshine.  AH has had to foot the bill for much medical care and DME.  There is no avenue available to her to get reimbursed through Sunshine and there is no

alternate provider to for on-call nursing services offered through Sunshine when there are gaps in services.

53. Failure to respond to emails or a written form of communication. Numerous requests were made verbally to Sunshine for a change in agencies for better staffing, addition of a second agency, complaints to AHCA.  I have no proof of many of  the requests because there is no written record provided to AH or Mr. Haeberli.  AH has no knowledge of what the AHCA representative wrote in her complaint.  Additionally, the Sunshine Healthcare care manager makes contact with AH monthly by way of phone or face to face meetings in the home. There is no record of what is discussed.

54. Numerous AHCA complaints were made with little or no resolution.  The majority of complaints to AHCA were made via a phone call.  Until recently, there was no written complaint sent to AHCA and no documentation was sent to Mr. Haeberli regarding his actual complaint made through AH, just a short statement of resolution.  During periods of complaints, the providers try to blame the failure to staff on AH or Mr. Haeberli.  They do not take responsibility for the fact that they are not staffing the case.

55. At the end of July 2024, the home nursing agency, Aveanna, complained to DCF about AH because a nurse had reported that Mr. Haeberli was tethered to the bed.  During the night, when there is no nursing AH sleeps next to Mr. Haeberli so that seizures can be addressed promptly.  When AH is caused to solely care for the needs of Mr. Haeberli for several 12 shifts in a row, her only option is to tether him to the bed during the night so that he does not elope while she is asleep next to him or injure himself in the home.  He has a history of quietly leaving the bed only to be found outside the home, or on the top shelf of a closet or walking with scissors in his hand or having destroyed property.  While there was no neglect found by DCF, this reporting of the incident produced much emotional stress on AH and felt vilified.  DCF requires her to not to restrain Mr. Haeberli which denies her a safe way to ensure Justin's safety while she is asleep.   This has occurred because Sunshine Health is denying Mr. Haeberli formal medical services and is often solely relying on "free" informal care (a single mother, AH) shift after shift.

56. Allowing Mr. Haeberli to go unstaffed for multiple shifts or days in a row denies both Mr. Haeberli and AH access to their medical care,

access to community, and socialization.  Mr. Haeberli requires continuous attention.  With the failure to staff Justin, the quality of life has plummeted for both Mr. Haeberli and AH.  AH has not been able to get therapy for herself, have surgery or make/attend medical appointments.

57. Failure to staff Mr Haeberli, had caused AH to miss important family functions such as weddings, funerals and family reunions.  It also interfered with AH's ability to adequately fulfill her role as guardian to her father.  With the stress from a failure to provide medical care to Mr Haeberli, there was no time for grieving or to have a funeral for her father.   This also prohibits AH from providing adequate care and assistance to her 84-year-old mother.  The lack of staffing has severely interfered with AH's ability to litigate against her former Husband, as she has had to file numerous extensions of time without any hope of any resolution due to there being no hope that Sunshine Health will provide necessary medical care for a dependent person of Florida.

58. Extreme measures were taken to get care provided.  AH had placed advertisements in newspapers and at a nursing school in Daytona.  AH contracted with a nanny agency to find nurses.  She was

informed that they could find nurses who would on-board with the nursing agency (Sonas at that time) and AH was to pay the nurses extra which would help maintain nurses on Mr. Haeberli's case. AH later found out that this was not legal and would be considered double dipping (insurance payments and private pay for same hours). The Nanny agency took approximately 26 thousand dollars from AH of which most was recovered by a long and arduous credit card dispute. AH hired nurses privately from Brightstar Nursing company and had one onboard with Aveanna agency that is contracted with Sunshine Health so that the service was then paid by insurance.

59. The Sunshine Plan of Care was not personalized which had been created from October 1, 2022, through the present. AH had complained to all three care managers that Mr. Haeberli was not able to attend his special needs classes for which AH was paying as well as therapies and medical appointments. Yet, his Person-centered care plan makes no requirement to monitor Justin's access to the community, socialization or medical care. All that was being monitored were his falls. The care managers were not preparing a plan specific for his needs. In a recent annual face-to-face meeting

on Monday September 9, 2024, with Mr. Haeberli's new care manager, Mark Donnelly, AH required the Case Manager to monitor Mr. Haeberli's access to medical care, therapy and special needs classes. She also requested information on maintenance therapy, and the Manager had no idea what that was. The past three care managers did not provide any written documentation regarding the person-centered care plan that they required me to sign. They write on their computers and expect you to sign a document that you cannot read. AH did not sign any document with Mr Donnelly. AH also requested information on an on-call service provider that can be called in the event of gaps in services. He claimed that that did not exist.

60. Mark Donnelly's supervisor, Ms. Raeesha Wells, did admit that there was maintenance therapy. Mr. Haeberli's doctor wrote a prescription for maintenance speech therapy on 9/11/2024, and AH was told that it had been approved and that they were looking for a provider. Mr. Haeberli has yet to receive services as of the date of this filing.

61. The person-centered care plan states that AH is the contingency if the nursing agency has a gap in service. There is no provision for an

on-call service provider.  There are no limitations placed in the service plan that would provide relief to their "contingency" plan if there was a failure to staff Mr. Haeberli's nursing attendant care for multiple back-to-back gaps in services.  There is no obligation under Sunshine Health LTC HCBS waiver to provide continuous services under a 24/7 authorization of services if they are solely relying on unpaid natural support as the sole contingency plan.  This does not agree with the State plan pursuant Care (SMMC) contract Attachment II, Exhibit II-B: updated February 1, 2022, Long-Term Care (LTC) Program, (FPXXXX) which is administered by AHCA and is a contract between AHCA and various Managed Care Organizations (MCOs), for example Sunshine Health Plan.  The LTC HCBS Waiver program provides for an on-call service so that no more than three hours goes unstaffed by the formal support during a gap in services.

62. There have been numerous attempts made by AH through emails to request on-call services and inform supervisor, Raeesha Wells, from Sunshine Health and Centene, that gaps in services violate both federal law and the AHCA contract.   The HCBS waiver portion of the AHCA contract has many requirements that Sunshine Health is

refusing to comply with.   AH made numerous attempts to get an

on-call phone number so that there is no more than a three-hour gap

in service.  Complaints were filed with AHCA without any

resolution.

63. The Member handbook does not address gaps in services, there is no

provision for an on-call phone number or that HCBS waiver will

cover maintenance therapy.  The benefits of the HCBS Waiver are

not elaborated in the Sunshine health member handbook.  The care

coordinators do not advocate or provide necessary information for

access to care covered by the Waiver and do not promote inclusion

into the community.

64. Nurses were not paid a competitive wage, which is a large part of

the high turnover and inability to staff.  In 2023, AH had paid

directly to nurses as much as $40/ hour (LPN) and $70/hour (RN) to

an agency to provide for Mr. Haeberli's care.  The Current

comparable 2024 agency rate from NurseSpring (RN) is significantly

higher.

65. AHCA provided paid claims documentation for Mr. Haeberli which

indicated that in 2017 Sunshine was paying the nursing agency

approximately $50/hour and in 2024 the payment made to the agency post pandemic was approximately $50/hour.

66. The Nursing agencies, (Sonas, Maxim, Family First, Aveanna, Absolute Health Professionals, NurseSpring) are contracted providers with Sunshine Health.  There is no obligation of the agency to fill the case that they took, they are not required to seek a single case agreement in order to pay nurses a competitive rate, they may limit access to medical care for cause of profit, they create contracts that relieve them of any liability for injury as a result of a failure to staff, they are not required to pay the nurses any percentage of their contractual agreed payment allowing for understaffing for purpose of greed, they allow the patient to go unstaffed in order to avoid paying overtime and they rely on the contingency care thereby relieving Sunshine and their contracted providers any requirement to staff the case altogether. Sunshine through its providers denied Mr. Haeberli access to medical care which saved Sunshine and the state of Florida a lot of Money.

67. There is no way to reach the Managed Care Organization, MCO, during the weekend, holidays and after hours for immediate reporting any unplanned gaps in service delivery.  Pursuant to the

AHCA Contract they need to be reachable 24 hours a day and seven days a week.  The Gap in services cannot be more than three hours after it having been reported.

III.    Legal Allegations

68. Count One: Deprivation of Rights Under Color of State Law (42 U.S.C. section 1983)

69. Plaintiff restates each and every allegation in paragraphs one (1) through sixty-seven (67) as though fully set forth herein.

70. Defendant Sunshine Health is a Florida based health plan company contracted with the state of Florida that offers government sponsored managed care through a public welfare program like Medicaid and is therefore "person...under color of any statute, ordinance, regulation , custom or usage, of the state of Florida as that term is used in 42 USC section 1983.

71. Defendant Centene is a corporation that wholly owns Sunshine Health and operates government-sponsored healthcare programs and is therefore a "person...under color of any statute, ordinance, regulation, custom or usage of the state of Florida as that term is used in 42 USC 1983.

72. Nursing Agency defendants, Sonas, Maxim, Family First Home Care, Aveanna Health Care, Absolute Health Professionals and NurseSpring of Jacksonville LLC are each a company that contracts with the state Medicaid health plan, Sunshine Health, to provide services to Medicaid beneficiaries in Volusia County through the public welfare programs like Medicaid and LTC HCBS waiver and is therefore "person under color of any statute, ordinance, regulation, custom or usage (of Florida) as that term is used in 42 USC 1983.

73. The 1987 Omnibus Budget Reconciliation Act, 42 USC Section 1396 , Title XIX of the Social Security Act of 1965, The Medicaid Act, Title II of the Americans with Disabilities Act (ADA), 42 USC section 1320a-2, 42 USC section 1396(a)(a)(8), 42 CFR Section 438.208(b), 42 CFR section 441.530(a)(1)(i-v), 42 CFR 441.301(b)(1), 42 CFR section 441.301, 42 CFR 438.206, 14th amendment of the constitution, clearly

and unambiguously create rights enforceable pursuant to 42 USC section 1983.

74. The Defendants' actions, individually and/or collectively, and in derogation of the above statutes and regulations, have deprived Mr. Haeberli of those rights by:

    a.  Maintaining a policy, practice or custom of not providing authorized medical services, 24/7 nursing attendant care, to Mr. Haeberli;

    b.  By maintaining a policy, practice or custom that denied Mr. Haeberli access to good quality care;

    c.  By maintaining a policy, practice or custom that delayed access to approvals for therapy;

    d.  By maintaining a policy, practice or custom that denied Mr. Haeberli access to medical appointments and therapy covered by Sunshine Health;

    e.  By maintaining a policy, practice or custom that denied Mr. Haeberli access to the community and opportunities to socialize;

    f.  By maintaining a policy, practice or custom that denied Mr. Haeberli access to therapy in his geographical area;

g.  By maintaining a policy, practice or custom that failed to care for Mr. Haeberli in such a manner and in such an environment as to promote maintenance or enhancement of the quality of life;

h.  By maintaining a policy, practice or custom that denied Mr. Haeberli timely access to medication(s);

i.  By maintaining a policy, practice or custom that caused Mr. Haeberli's providers not to want to work with Sunshine Health;

j.  By maintaining a policy, practice or custom that denied Mr. Haeberli access to his benefits under the AHCA health plan contract FPXXX (attachment relating to HCBS waiver);

k.  By maintaining a policy, practice or custom that denied Mr. Haeberli access to a person-centered care plan that addressed his needs, monitored his access to the community and continuous access to services.

l.  By maintaining a policy, practice or custom that abused the contingency plan requiring 24/7 obligation of Mr. Haeberli's only informal support, Ayla Haeberli;

m. By maintaining a policy, practice or custom that denied Mr. Haeberli access to a medically prescribed second caregiver;

n. Depriving MR Haeberli of his right to be free from physical or mental abuse, involuntary seclusion for purpose of financial gain by not supplying a provider that would fully staff Mr. Haeberli's medical needs, by not providing an on call phone number to provide services within a three hour notification of a gap in services, by denying the need for a second caregiver, and by not providing a competitive hourly compensation to nurse and/or provider;

o. Depriving Mr. Haeberli of his medical services, required Ayla Haeberli, to fill in gaps and be both the nurse and the second caregiver, thereby depriving her access to her medical appointments, her therapy and surgery;

p. Depriving Mr. Haeberli of his medical services, caused Ayla Haeberli, to be isolated without socialization, ability to engage in social activities and is emotionally devastating;

75. The Defendants' actions were intentionally willful, and in reckless disregard for Mr. Haeberli's rights.

76. The Defendants' actions were intentionally willful, and in reckless disregard for Ayla Haeberli's rights.

77. As a result of the defendants' unlawful actions, Mr. Haeberli suffered, and continues to suffer, damages including but not limited to physical and mental pain and suffering, emotional distress, isolation, humiliation and embarrassment and a denial of access to medical care.

78. As a result of the defendants' unlawful actions, Ayla Haeberli suffered, and continues to suffer, damages including but not limited to physical and mental pain and suffering, emotional distress, isolation, humiliation and embarrassment and a denial of access to medical care.

IV.   Relief Requested

*WHEREFORE*, Plaintiffs Mr. Justin Haeberli by next friend or Guardian Ayla Haeberli, and Ms. Ayla Haeberli, respectfully requests that the Court enter judgment in her their favor and against the Plaintiffs and provide the following relief:

79. Order the Defendants, jointly and severally, to pay him actual damages in an amount sufficient to compensate Mr Haeberli an

amount sufficient to compensate him for any actual out of pocket costs and property damage losses, including but not limited to any subrogation by any insurance company or government entity;

80. Order the Defendants, jointly and severally, to pay him actual damages in an amount sufficient to compensate Ms. Ayla Haeberli an amount sufficient to compensate her for any actual out of pocket costs and property damage losses, including but not limited to any subrogation by any insurance company or government entity;

81. Order the Defendants, Centene and/or Sunshine Health, to pay him damages in an amount sufficient to compensate Mr Haeberli for private pay medical care including, but not limited to,  24/7 nursing services, 24/7 second caregiver services, ongoing Therapy for Applied Behavioral Analysis, art, music, equine, and speech, Durable Medical equipment, medications-access to mail order 3 month aliquots, Dr/Specialist appointments, and medical care with a net zero copay for the rest of Mr Haeberli's life and at least the next thirty years;

82. Order the Defendants, jointly and severally, to pay Mr. Justin Haeberli compensatory damages for the physical and mental pain

and suffering, emotional distress, humiliation and embarrassment caused by the Defendants' actions;

83. Order the Defendants, jointly and severally, to pay Ms. Ayla Haeberli compensatory damages for the physical and mental pain and suffering, emotional distress, humiliation and embarrassment caused by the Defendants' actions;

84. Order Defendants Centene and/or Sunshine Health to pay Mr. Haeberli punitive damages for willful, reckless and malicious actions:

85. Order Defendants Centene and/or Sunshine Health to pay Ms. Ayla Haeberli punitive damages for it willful, reckless and malicious actions:

86. Order the Defendants, jointly and severally, to pay pre- and post-judgment interest on all sums awarded;

87. Order the Defendants, jointly and severally, to pay her reasonable attorney fees and costs of litigation this action: and,

88. Order the Defendants, jointly and severally, to provide any and all other relief to which the Plaintiffs may be entitled.

V.    Demand for Jury Trial

Plaintiffs Mr Justin Haeberli, by next friend and/or Guardian

Advocate, Ayla Haeberli, and Ms Ayla Haeberli demands a trial by jury

on all issues so triable.

Respectfully submitted,

Ayla Haeberli, pro se
PO Box 336
Deleon Springs, FL 32130
Cell Phone: 407-417-4752
Email Address: aylahaeberli@yahoo.com